UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STERLING JEWELERS INC., | ) | CASE NO. 5:14-CV-1369-JRA |
| | ) | |
| Plaintiff and | ) | |
| Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| | ) | |
| ARTISTRY, LTD., | ) | |
| | ) | |
| Defendant and | ) | **MEMORANDUM OF OPINION** |
| Counterclaim Plaintiff. | ) | **AND ORDER** |

This matter comes before the Court on the Motion for Summary Judgment of Plaintiff/Counterclaim Defendant Sterling Jewelers, Inc. ("Sterling"). Sterling seeks resolution of its own declaratory judgment claim as well as the counterclaims of Defendant/Counterclaimant Artistry, Ltd. ("Limited"). The Court has reviewed the parties' pleadings, motion, opposition, reply, exhibits, and applicable law. For the reasons that follow, Sterling's motion is GRANTED.

**I. Facts**

Sterling is one of the largest retail jewelers in the United States, headquartered in Akron, Ohio. Sterling's retail operations include more than 3,000 stores operating nationwide under various names including Kay Jewelers, Zales, Jared the Galleria of Jewelry, as well as several regional brands such as Shaw's Jewelers, Belden Jewelers, and Goodman Jewelers. Sterling markets itself to retail customers as providing a full range of jewelry from lower-priced everyday items to items listed for several thousand dollars. Sterling primarily develops its product lines in-house and designs much of its own product. Sterling sources directly from manufacturers, does

1

not deal with jewelry wholesalers, and does not wholesale its own products. Sterling owns and operates its variously named stores and its website, selling directly to end user consumers. Sterling markets extensively to consumers via television, radio, internet advertising (including digital banner and key word advertisements as well as multiplatform social media activities), catalogs, direct mail, point of purchase advertising, and consumer magazines.

Limited is a comparatively small jewelry wholesaler headquartered in Skokie, Illinois. Limited has operated under the "Artistry, Ltd." name since 1982. Limited markets its products to retailers as a private label brand. Limited purchases unbranded jewelry from manufacturers for sale to independent jewelry retailers, who may in turn apply their own brand or mark to the product. Limited products are sold in hundreds of retail jewelry stores nationally, but Limited discourages the use of "Artistry" or "Artistry, Ltd." in conjunction with its products. When Limited's products are required by law to have an identifying mark, Limited uses "LLK," the initials of its founder and president, Laura Klemt ("L. Klemt"), not "Artistry" or "Artistry, Ltd."

Limited markets itself to industry participants at industry trade shows, in industry publications, and through its own website. Limited will not sell to retail consumers. To obtain a copy of Limited's printed catalogue, a company or individual must be listed with the Jewelers Board of Trade and vetted by the employees of Limited for creditworthiness and to confirm they are actually a retailer capable of purchasing inventory. Although Limited maintains a website, images of its products are not available on the site to end user consumers. Limited engages in targeted email marketing through email blasts to its curated customer list of retailers who purchase its products for resale. Limited considers its customers more "up market" than Kay Jewelers and explains that they "don't want to be associated with a mainstream mall brand" and, as such, an association with Sterling or Kay is unhelpful to Limited. Doc. 47-2, p. 22-23, 31.

2

Sterling began using the "Artistry Diamond Collection" to market diamond bridal jewelry in 2007 and registered the trademark with the United States Patent and Trademark Office ("USPTO") in June of 2009. Initially the "Artistry Diamond Collection" was offered in approximately fifty Kay Jewelers branded stores. Sales were later expanded, but Sterling discontinued the line after obtaining the trademark. The 2009 registration was subsequently cancelled by the USPTO due to Sterling's failure to file a declaration of continued use under Section 8 of the Lanham Act. In 2012, Sterling sought and obtained additional trademark registrations using "artistry," including: Artistry Blue Diamonds, Artistry Black Diamonds, Artistry Yellow Diamonds, Artistry Purple Diamonds, and Artistry Green Diamonds. Sterling then launched what would become over the following years a $20 million national advertising campaign. By 2013, Artistry products were sold in Kay Jewelers locations nationwide. L. Klemt became aware of Sterling's use of "Artistry" due to its national ad campaign during the 2013 holiday season.

In June of 2014, Limited sent a letter to Sterling's counsel informing Sterling of Limited's senior use of "artistry." At that time, Limited also sought cancellation of Sterling's 2009 registration. On June 23, 2014, without responding to Limited's letter, Sterling filed the instant suit seeking a declaratory judgment that Sterling was not infringing on Limited's existing rights. Limited answered and counterclaimed that Sterling was infringing on its trademark. Limited seeks relief under the Lanham Act and Ohio law. Limited also seeks the cancellation of Sterling's trademark registrations and an award of damages including Sterling's profits, among other remedies.

Sterling contends summary judgment is merited on three issues: 1) Sterling's request for declaratory judgment; 2) Sterling's laches defense; and 3) Limited's request for damages including

3

an award of Sterling's profits. Limited opposes the motion and Sterling has further replied in support. The matter is now ripe for the Court's review.

**II. Legal Standard**

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Estate of Smithers v. City of Flint*, 602 F.3d 758, 761 (6th Cir. 2010). A fact must be essential to the outcome of a lawsuit to be "material." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Summary judgment will be entered when a party fails to make a "showing sufficient to establish . . . an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). "Mere conclusory and unsupported allegations, rooted in speculation, do not meet [the] burden." *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003).

Summary judgment creates a burden-shifting framework. *Anderson*, 477 U.S. at 250. The moving party has the initial burden of showing there is no genuine issue of material fact. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). When evaluating a motion for summary judgment, the Court construes the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party may not simply rely on its pleadings; rather it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1996). A party seeking summary judgment in a case alleging trademark infringement "must establish that a genuine issue of material fact exists concerning those factors that are material to whether confusion is likely in the marketplace

as a result of the alleged infringement." *Holiday Inns, Inc. v. 800 Reservations, Inc.*, 86 F.3d 619, 622-623 (6th Cir. 1996).

**III. Law and Analysis**

Sterling's complaint seeks declaratory judgment stating that Sterling has not infringed upon Limited's existing rights. Limited's counterclaims fall under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165.02; and Ohio common law. Likelihood of confusion is a required element of all claims. Sterling moves for summary judgment on the ground that there exists no likelihood of confusion.

The parties agree that their competing claims turn on a likelihood of confusion analysis under the eight factors set forth in *Frisch's Rests. Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642 (6th Cir. 1982). The eight factors are:

> (1) strength of the senior use's mark;
> (2) relatedness of the goods;
> (3) similarity of the marks;
> (4) evidence of actual confusion;
> (5) marketing channels used;
> (6) likely degree of purchaser care;
> (7) the junior user's intent in selecting the mark; and
> (8) the likelihood of expansion of the product lines.

*Frisch's Rests. Inc.* 670 F.2d at 648. "Not all of these factors will be relevant in every case, and in the course of applying them, 'the ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way.'" *Progressive Distribution Services, Inc. v. United Parcel Service, Inc.*, 856 F.3d 416, 424 (6th Cir. 2017), quoting *Homeowners Grp., Inc. v. Home Mkg. Specialists, Inc.,* 931 F.2d 1100, 1107 (6th Cir. 1991). The factors themselves "imply no mathematical precision, but are simply a guide to help determine whether confusion is likely." *Homeowners Grp.*, 931 F.2d at 1107.

5

The Sixth Circuit "considers the question of whether there is a likelihood of confusion to be a mixed question of fact and law." *Progressive Distribution Services*, 856 F.3d at 427. "Any dispute about the evidence that pertains to the eight factors presents a factual issue." *Id.* "If the facts relevant to the applicable factors are contested, factual findings must be made with respect to each of these factors." *Data Concepts, Inc. v. Digital Consulting, Inc.,* 150 F.3d 620, 624 (6th Cir. 1998) *abrogated on other grounds by Hana Fin., Inc. v. Hana Bank*, --- U.S. ---, 135 S.Ct. 907, 190 L.Ed.2d 800 (2015). Determination of whether "a given set of foundational facts establishes a likelihood of confusion is a legal question." *Progressive Distribution Services*, 856 F.3d at 427, quoting *Homeowners Grp., Inc.* 931 F.2d at 1107. To survive a summary judgment motion on the likelihood of confusion, the nonmoving party must identify factors in dispute that may be material to the case. *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d at 1107. One factor alone in favor of the nonmoving party is not enough to resist summary judgment. *Id.*

The parties initially characterized the relevant market and analysis differently. Sterling contends, pursuant to *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 679 F.3d 410 (6th Cir. 2012), that the relevant analysis is of the strength of Limited's mark among the general public as potential buyers of Sterling's junior product. In contrast, Limited argues that it raises a "reverse confusion" claim that is distinct from conventional confusion and requires a different analysis:

> A reverse confusion claim differs from the stereotypical confusion of source or sponsorship claim. Rather than seeking to profit from the goodwill captured in the senior user's trademark, the junior user saturates the market with a similar trademark and overwhelms the senior user. The public comes to assume the senior user's products are really the junior user's or that the former has become somehow connected to the latter. The result is that the senior user loses the value of the trademark—its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets.

*Ameritech, Inc. v. Am. Info. Techs. Corp.*, 811 F.2d 960, 964 (6th Cir. 1987). Thus, according to Limited, the relevant market is not Sterling's end user consumers, but Limited's independent retailers and the relevant inquiry is the strength of Sterling's junior mark and its ability to "overpower" Limited's senior mark in that market.

Sterling acknowledges the difference between a conventional infringement claim and Limited's reverse claim and has replied to Limited's arguments addressing the relevant market – Limited's current and potential industry customers. The Sixth Circuit, however, has rejected the distinction between "forward and reverse" confusion claims on which Limited relies. "[W]hile certain circuits have adopted a different test for claims for forward and reverse confusion, the Sixth Circuit is not one of them." *Progressive Distribution*, 856 F.3d at 431. Instead, the Sixth Circuit explains:

> Rather, this Court explicitly stated that "the stronger a trademark, the greater the protection afforded." Our basis for reversing the district court's dismissal of plaintiff's reverse confusion claim in *Ameritech* was our recognition that a mark "might be weak in the national market, but might still be strong in the senior user's geographical and product area and thus deserving of protection."

*Progressive Distribution*, 856 F.3d at 431. Thus, Limited's formulation of the appropriate inquiry with regard to the strength of Sterling's mark is flawed. The relevant inquiry is the strength of Limited's mark, not Sterling's ability to overpower it. *Id.* This Court will address Limited's reverse confusion claim as the Sixth Circuit directs, by evaluating the strength of Limited's mark in its segment of the industry.

### 1. Strength of the Marks

According to the Sixth Circuit, the strength evaluation "encompasses two separate components: '(1) 'conceptual strength,' or 'placement of the mark on the spectrum of marks,' which encapsulates the question of inherent distinctiveness; and (2) 'commercial strength' or 'the

7

marketplace recognition value of the mark.'" *Progressive Distribution*, 856 F.3d at 428, quoting *Maker's Mark*, 679 F.3d at 419.

**(a) Conceptual Strength**

"The more distinct a mark, the more likely is the confusion resulting from its infringement, and therefore, the more protection it is due." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). A mark's distinctiveness and resulting conceptual strength "depends partly upon which of four categories it occupies: generic, descriptive, suggestive, and fanciful or arbitrary." *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 631 (6th Cir. 2002) (internal quotation marks omitted).

A descriptive mark "specifically describes a characteristic or ingredient of an article," while an arbitrary mark "has significance recognized in everyday life, but the thing it normally signifies is unrelated to the product or service to which the mark is attached, such as CAMEL cigarettes or APPLE computers." *Id.* (internal quotations and brackets omitted). "A descriptive mark, by itself, is not protectable." *Innovation Ventures, L.L.C. v. N.V.E., Inc.*, 694 F.3d 723, 730 (6th Cir. 2012). A "merely descriptive" term can "by acquiring a secondary meaning, *i.e.*, becoming distinctive of the applicant's goods, become a valid trademark." *Id.* (internal quotation marks and ellipses omitted).

Neither party directly addresses the distinctiveness of "artistry" as a trademark. Although no proof of distinctiveness was required by the USPTO, Limited argues that the existence of Sterling's multiple trademarks for "artistry" proves *ipso facto* that "artistry" is protectable and strong. Sterling, without discussing distinctiveness, emphasizes the presence of third parties who use "artistry" in their jewelry business names and promotional materials. Limited objects to the sources of Sterling's information on third party use but does not offer any evidence of defect or

8

inaccuracy in the information and has not filed any motion necessary to exclude the reports. Limited cites *Lucky's Detroit, L.L.C. v. Double L, Inc.*, 533 Fed. Appx. 553, 557 (6th Cir. 2013), in support of its contention that the information offered by Sterling is insufficient. However, Limited omits the relevant portion of the quote, which reads in its entirety: "Merely showing the existence of marks *in the records of the USPTO* will not materially affect the distinctiveness of another's mark which is actively used in commerce." *Id.* (italicized portion omitted by Limited). In *Lucky's Detroit* the issue was lists of third party users who were not demonstrated to be in the relevant southeast Michigan market. The particular concerns in play in *Lucky's Detroit* are absent here. Limited claims a nationwide presence in the jewelry retail industry, and the material presented by Sterling addresses the jewelry industry and existing operators within it. Moreover, the Sixth Circuit accepts the use of internet searches, in the proper context, to demonstrate third party use. *See, e.g., Progressive Distribution*, 856 F.3d at 427-431.

Sterling has produced material demonstrating the current use of "artistry" throughout the United States to sell or promote jewelry or other high end consumer goods, including at least twenty-three active businesses using "artistry" in a company name, product name, or advertising campaign related to jewelry. Limited admits to knowledge of at least three third-party users, one in California, one in Illinois, and one, "Artistry in Gold," among its own clientele. The Sixth Circuit recognizes evidence of "'extensive third party use of similar marks'" to show that a mark is not distinctive, explaining that "third party use weakens a mark because the mark is not an identifier for a single source." *Progressive Distribution*, 856 F.3d at 429, quoting *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786 (6th Cir. 2004).

Limited has produced nothing to demonstrate the distinctiveness of its claimed senior mark and similarly offers nothing to contradict the material presented by Sterling. Accordingly, the

Court finds the conceptual strength of "artistry" as a trademark in connection with the sale of jewelry is weak.

**(b) Commercial Strength**

The strength analysis does not end with the "existence or non-existence of distinctiveness" because "[a] mark can be conceptually strong without being commercially strong, and thus weak under *Frisch*." *Progressive Distribution*, 856 F.3d at 430 (internal quotation marks omitted). A mark's commercial strength "depends on public recognition, or the extent to which people associate the mark with the product it announces." *Maker's Mark*, 679 F.3d at 419.

The Sixth Circuit generally considers survey evidence the "most persuasive evidence of commercial recognition . . . however it is by no means a requirement. Proof of marketing may be sufficient to support a finding of broad public recognition." *Progressive Distribution*, 856 F.3d at 430 (internal quotation marks omitted). "Conversely, proof that third parties have extensively used a trademark or similar trademarks in the relevant market may indicate that the trademark is commercially weak." *Id.* citing *Homeowners Grp.*, 931 F.2d at 1108.

In opposition to Sterling's motion for summary judgment, Limited states without citation to the record or supporting material:

> Artistry, Ltd., however, has spent many hundreds of thousands of dollars advertising and promoting its products and services to its customers in the retail jewelry trade, and the evidence supports the conclusion that Artistry Ltd. is well-known to its customers and potential customers in that market.

Doc. 51, p. 12. In the absence of any material produced by Limited in support of its market recognition or actual advertising expenditure, this Court is again left with contradicted evidence that use of "artistry" is far from unique in the jewelry business, including among Limited's clients. Accordingly, in the absence of supporting evidence, this Court finds that "artistry" when used in connection with jewelry is commercially weak. *Progressive Distribution*, 856 F.3d at 430

("Despite its assertions of an extensive internet presence, Progressive provides only minimal evidence to support its statements. In fact, the only evidence in the record that exists which can speak to Progressive's commercial presence is the aggregate sum of Progressive's advertising costs. But that by itself is not enough to avoid summary judgment."). Having determined that "artistry" is both conceptually and commercially weak, the Court concludes the strength factor weighs against a finding of likelihood of confusion.

### 2. Relatedness of the Goods

The Sixth Circuit has established three benchmarks to consider when evaluating the relatedness of parties' goods and services. "First, if the parties compete directly, confusion is likely if the marks are sufficiently similar; second, if the goods and services are somewhat related, but not competitive, then the likelihood of confusion will turn on other factors; finally if the products are unrelated, confusion is highly unlikely." *Kellogg Co. v. Toucan Gold, Inc.,* 337 F.3d 616, 624 (6th Cir. 2003). Goods and services are not necessarily related simply because they "coexist in the same broad industry." *Homeowners Grp.*, 931 F.2d at 1109. The relatedness inquiry focuses on whether goods and services are "similarly marketed and appeal to common customers" and are therefore "likely to lead consumers to believe that they 'come from the same source, or are somehow connected with or sponsored by the same company.'" *Terma-scan*, 265 F.3d at 633, quoting *Homeowners Grp.*, 931 F.2d at 1109.

While both parties sell jewelry, the Sixth Circuit directs this Court to focus on whether parties compete directly for a common customer. The Court finds they do not. Limited is a wholesaler who refuses to sell directly to end user consumers and operates no retail stores. Sterling sells only to end users via its variously named retail stores and website. Limited suggests, without supporting evidence, that some of Sterling's smaller regional branded locations may also offer

11

Limited's products. Sterling has clarified that none of its variously branded retail stores carry outside product. Sterling markets, extensively, to the general public via print, digital, and broadcast advertisements. Limited markets exclusively to trade participants via trade shows and trade publications; Limited further vets inquiries to ensure companies or individuals are listed with the Jewelers Board of Trade and creditworthy. Although they offer distinct goods and services to a completely different customer base, it is true that a prospective trade customer could be aware of Sterling's use of "artistry" and wonder whether Limited was supplying Sterling. Thus, drawing every possible inference in favor of Limited, the Court finds this factor is neutral.

### 3. Similarity of the Marks

In determining the similarity of trademarks, the Court "must determine, in the light of what occurs in the marketplace, whether the mark will be confusing to the public when singly presented." *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1187 (6th Cir. 1988). Sterling argues that its use of "artistry" is always accompanied by the well-known trademarks of its stores, including Kay Jewelers, and that the use of a challenged junior mark with a strong existing mark or tradename makes confusion less likely. Limited urges the Court to simply view the marks side by side and ignore the Sixth Circuit's preference for a much "broader" inquiry "inasmuch as we are obligated to evaluate the marks as they appear in commerce—not just as they appear in black and white." *Progressive Distribution Services*, 856 F.3d at 433. Limited cites *Tovey v. Nike, Inc.*, No. 1:12CV448, 2014 WL 3510975 (N.D. Ohio. July 10, 2014), and J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:10, for the proposition that use of a junior mark along with an existing house mark may be more, not less, confusing.

The Sixth Circuit disagrees. "As this Court has already stated in *AutoZone, Inc.*, 373 F.3d at 797, the inclusion of a house mark can reduce the likelihood of confusion from any similarity

12

that does exist. This is especially true when one mark—namely that of UPS—is so easily recognizable and associated with a strong and popular brand . . . ." *Progressive Distribution,* 856 F.3d at 433. The circumstances here—a smaller company who operates in a specific market and a well-established national brand that always appears with the challenged mark—are similar to those in *Progressive*. Moreover, as this Court previously noted, Sterling's advertising is directed at end users and promotes a specific line of colored diamond jewelry available at its retail stores, unlike "Artistry, Ltd." which is a wholesale company name, not a separately promoted product line. Because the market context for each mark is dissimilar, it does not appear that the marks are "confusing to the public when singly presented." *Id.* (internal quotation marks omitted). Thus, this factor militates against finding there is a likelihood of confusion.

### 4. Evidence of Actual Confusion

"Nothing shows the likelihood of confusion more than the fact of actual confusion." *Groeneveld Transport Efficiency, Inc. v. Lubecore Intern., Inc.*, 730 F.3d 494, 517 (6th Cir. 2013). Yet, evidence of actual consumer confusion is not necessary to show likelihood of confusion. *See Frisch's Restaurant, Inc.*, 759 F.2d at 1267. Even where confusion exists, "isolated instances of confusion are insufficient to support a finding of likely confusion." *Progressive Distribution*, 856 F.3d at 433.

Sterling contends that eleven instances of alleged confusion during the nine year period of Sterling's use of various "artistry" marks is insignificant. Limited states that Sterling mischaracterizes "numerous" instances of confusion but offers no numbers or details in support of this representation. The portions of the L. Klemt transcript Limited cites name four individuals who L. Klemt remembers having asked whether Limited had a relationship with Sterling or Kay. Susan Klemt, who oversees many of Limited's daily operations, references some of the same

names, and describes additional conversations. Taken together, the testimony appears to identify eleven interactions in which Sterling was mentioned. Some of the referenced conversations do not deal with actual confusion. At least one individual knew the two were not affiliated and another emailed an inquiry with a picture of a white gold ring that was a Sterling product. Limited's records of these interactions continue into 2016, three years after the most recent use of "artistry" by Sterling, after the $20 million in advertising was spent, and after artistry colored diamonds were offered in 1,000 Kay branded stores nationwide.

Under similar circumstances the Sixth Circuit states: "We believe that if there are a large volume of contacts or transactions, which could give rise to confusion, and only limited instances of confusion present themselves, then evidence of actual confusion should receive little weight." *Id.* citing McCarthy, *supra*, § 23:14 and *George & Co., L.L.C. v. Imagination Entertainment, Ltd.*, 575 F.3d 383, 399 (4th Cir. 2009) ("[T]he company's failure to uncover more than a few instances of actual confusion creates a presumption against likelihood of confusion in the future" when there are so many opportunities for confusion to occur.) (internal citations omitted). Given the record before the Court, this factor weighs against a finding of likelihood of confusion.

### 5. Marketing channels

To determine marketing channels, this Court must consider "how and to whom the respective goods or services of the parties are sold." *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 519 (6th Cir. 2007). There is less likelihood of confusion where the goods are sold through different avenues. *Id.* "Where the parties have different customers and market their goods or services in different ways, the likelihood of confusion [also] decreases." *Therma-Scan*, 295 F.3d at 636. Sterling and Limited admittedly use vastly different forms of marketing. Sterling uses all media, nationwide; Limited specifically targets industry participants and will not sell to

14

end users. Nevertheless, Limited contends, because Sterling's broad, nationwide, consumer directed efforts inevitably reach Limited's own customers due to their ubiquity, a jury could find likelihood of confusion. Limited offers no case law in support of its argument. Sterling cites several cases. This Court finds *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, particularly helpful on the subject:

> Obviously, dissimilarities between the predominant customers of a plaintiff's and defendant's goods or services lessens the possibility of confusion, mistake, or deception. Likewise if the services of one party are sold through different marketing media in a different marketing context than those of another seller, the likelihood that either group of buyers will be confused by similar service marks is much lower than if both parties sell their services through the same channels of trade. As one commentator has noted:
>
>> If one mark user sells exclusively at retail and the other exclusively to commercial buyers, then there may be little likelihood of confusion since no one buyer ever buys both products. For example, if one user sells food only at retail to consumers and the other sells only to commercial food brokers (and the product never reaches consumers under the mark), then there is no one buyer who will be faced with both products, and hence no confusion.

*Homeowners Grp.*, 931 F.2d at 1110, quoting *McCarthy, supra*, at § 24:7, 190-91 (2nd Ed.1984).

In *Homeowners*, the court was faced with two marks, both used the letters "HMS" with a rooftop design. The first company marketed to real estate brokers and targeted its marketing to that commercial group. The second company sold exclusively to the owners of real estate who might consider selling their property. Naturally, it was likely that any number of real estate brokers would see the consumer service marketed in the real estate section of newspapers. Despite this reality, the Sixth Circuit concluded it was apparent that the two companies market and sell to different sets of potential customers with little, if any, overlap in media used. The circumstances in *Homeowners* are precisely the circumstances here. Accordingly, this Court finds the parties' marketing channels are distinct and do not contribute to a likelihood of confusion.

15

### 6. Likely degree of purchaser care

"Generally, the standard for determining whether a likelihood of confusion would arise is predicated upon an ordinary buyer exercising ordinary caution." *Progressive Distribution*, 856 F.3d at 435. A "higher degree of care, in contrast, is appropriate where the buyer in question has a particular expertise or sophistication." *Homeowners Grp.*, 931 F.2d at 1111. "This expectation of greater attention, where appropriate, diminishes the likelihood of confusion." *Therma-Scan*, 295 F.3d at 638.

Sterling argues that individuals making fine jewelry purchases are particularly attentive to such transactions due to the large sums of money involved. Limited abandons its argument that the appropriate consumer to evaluate is its own independent retail operator and instead states that individuals buying mall jewelry store items for less than fifty dollars are unlikely to exercise "substantial care." Doc. 51, p. 21. Bearing in mind Limited's reverse confusion claims, the relevant buyer is an independent retailer purchasing inventory from Limited, not the optimistic boyfriend in a mall jewelry store. Limited has described its customers as discerning, higher end, independent retailers. It further vets their professional affiliations and creditworthiness before it will send a catalogue. Clearly, Limited anticipates high value transactions for its offerings from sophisticated business buyers. The Limited customer is exactly the consumer the Sixth Circuit expects to exhibit a greater degree of care and attention to commercial purchases. For these reasons this factor weighs against likelihood of confusion.

### 7. Intent when selecting the mark.

Courts have held that "[i]f a party chooses a mark with the intention of creating confusion between its products and those of another company, 'that fact alone may be sufficient to justify an inference of confusing similarity.'" *Therma-Scan*, 295 F.3d at 638, quoting *Daddy's Junky Music*

*Stores, Inc.*, 109 F.3d at 286. Circumstantial evidence of copying, particularly the use of a contested mark with knowledge that the mark is protected, may be sufficient to support an inference of intentional infringement where direct evidence is not available. *Id.* at 638–39. However, knowledge of a trademark alone will not support a finding of intent to confuse if other circumstances show that the defendant believed there was no infringement. *See AutoZone, Inc.*, 373 F.3d at 800. Moreover, a finding of "bad-faith intent to infringe upon another mark may not increase the likelihood of confusion if the other seven factors suggest that confusion is improbable." *Id.* at 799.

Sterling states that it was unaware of Limited and its business when it selected "artistry" to use in connection with diamond jewelry. Limited has placed nothing in the record that contradicts this representation. Limited contends that some degree of bad faith should be imputed in the alleged insufficiency of Sterling's research when seeking trademark registrations and in Sterling's continued use of the mark after filing suit. Limited's arguments do not address the relevant inquiry identified by the Sixth Circuit. The Court also notes that Limited never took action to restrain Sterling's use of the mark during the pendency of this suit. Nothing in this record suggests an intention to create confusion or copying that would support a finding of bad-faith intent. Accordingly, in the absence of material probative of bad-faith intent, the Court concludes that this factor weighs against finding a likelihood of confusion.

### 8. Expansion of product lines

There is no evidence in the record that either party intends to expand its operations or services with respect to the competing marks. Sterling states that it does not intend to operate a wholesale business; Limited does not intend to use "artistry" for retail sales. Accordingly, the Court does not consider this factor.

### 9. Summary of factors

When applying the *Frisch* factors, "[t]he ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Homeowners Grp.*, 931 F.2d at 1107. The factors "imply no mathematical precision, but are simply a guide to help determine whether confusion is likely." *Id.* "A court may find that at least one factor favors the nonmoving party while ultimately concluding that the disputed factor is not sufficient to preclude summary judgment." *Progressive Distribution*, 856 F.3d at 436 (internal quotation marks omitted). The balance of the factors, including those identified by the Sixth Circuit as the most significant—the strength of the mark and the similarity of the marks—favor Sterling. *Maker's Mark*, 679 F.3d at 424 (highlighting the most important factors in a likelihood of confusion analysis). Accordingly, summary judgment is appropriate.

## IV. Conclusion

Based on the evidence and the record, the Court finds no likelihood of confusion. Therefore, summary judgment is GRANTED in favor of Sterling. Having found no likelihood of confusion, Sterling's trademarks are valid and subsisting. Because summary judgment has been granted on the issue of confusion, Limited's counterclaims are without merit and the Court need not reach the issues of laches and damages.

IT IS SO ORDERED.

                                                                                         */s/ John R. Adams*
                                                            JUDGE JOHN R. ADAMS
                                                            UNITED STATES DISTRICT COURT

Date: September 26, 2017